Jacob C. Cook, as Administrator, etc., of Clarissa Cook, Deceased, Respondent, *v.* Alfred W. Shull and Josiah Snell, Appellants, Impleaded with Others.

*Sureties — indemnifying a bank for money paid to a committee of an incompetent — validity of an agreement by which they are to hold the money until discharged from liability.*

Where sureties have indemnified a bank in paying over to a committee of an incompetent a sum of money represented by a negotiable certificate of deposit, issued to the incompetent before she was declared such, but which could not be found, under an agreement by the committee to deliver a portion of such money to the sureties, who promised in writing to repay it to the committee or his successors in office, with interest, whenever the sureties should be relieved or discharged from the bond, the sureties are entitled to the same protection, in an action brought by the administrator of the incompetent person to recover such money, as the law would have afforded to the bank, and may retain the money until they are indemnified against their liability upon the bond.

Appeal by the defendants, Alfred W. Shull and Josiah Snell, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Montgomery on the 23d day of May, 1898, upon the decision of the court rendered after a trial at the Montgomery Trial Term before the court without a jury, except from so much of said judgment as dismisses the complaint as to the defendants other than themselves, with notice of an intention to bring up for review upon such appeal an order made at the Washington Special Term, and entered in the office of the clerk of the county of Montgomery on the 9th day of May, 1898, granting the plaintiff an extra allowance of costs; and also from an order made

at the Fulton Special Term and entered in the office of the clerk of the county of Montgomery on the 14th day of June, 1898, denying the said defendants' motion for a retaxation of costs.

The judgment appealed from directed that the plaintiff recover of the defendants, Alfred W. Shull and Josiah Snell, the sum of $4,000, with interest from April 10, 1890.

*Andrew J. Nellis,* for the appellants.

*W. H. Van Steenbergh,* for the respondent.

MERWIN, J.:

On the 10th of October, 1885, Clarissa Cook deposited with the National Spraker Bank $5,400 in money and received from said bank a certificate of deposit reading as follows:

"$5,400.         NATIONAL SPRAKER BANK,

"CANAJOHARIE, *October* 10*th,* 1885.

"Mrs. Clarissa Cook has deposited in this bank five thousand four hundred dollars, payable in bank bills, to the order of herself, with interest at the rate of — per cent per annum, if left six months. No interest allowed on fractions of a month.

"WM. WILES,

"*Teller.*"

Thereafter Mrs. Cook became of unsound mind, and in July, 1888, due proceedings were had whereby she was declared to be of unsound mind, and Jacob C. Cook was appointed committee of her person and estate. In July, 1894, Mrs. Cook died intestate, and the plaintiff was appointed administrator of her estate.

Jacob C. Cook, while acting as committee, demanded of the bank payment of the money so deposited, without, however, returning the certificate. He was unable to find the certificate, and it was then claimed to have been lost or destroyed. The bank declined to pay unless it was furnished with a bond of indemnity. Thereupon a bond, upon which the defendants Shull and Snell were sureties, was furnished, which was satisfactory to the bank; and, on its presentation to the bank on the 10th of April, 1890, the money, $5,400, was paid over to Cook, and on the same day, and in accordance with a previous arrangement with Shull and Snell, $4,000 of the money was turned over to them, being $2,000 to each, and they gave back

to Cook, as committee, two instruments in writing, signed by them and dated April 10, 1890, in each of which they promised to pay to Cook, as committee, or his successors in office, $2,000, with interest at four per cent, whenever they should be relieved or discharged from the bond. Shull and Snell were induced to become sureties on the bond by reason of the promise of Cook to deliver to them the sum of $4,000, part of said moneys, and, in pursuance of such promise, the $4,000 was delivered to them and the two instruments executed by them to the committee.

On January 1, 1896, the plaintiff, as administrator of Mrs. Cook, demanded of the defendants Shull and Snell payment of the said $4,000 and interest at four per cent, but they refused to pay, claiming they had a right to hold the same till they were discharged from the bond held by the bank.

The certificate of deposit has never been returned or presented to the bank and has never been found. The defendants Shull and Snell have never been released from their obligation to the bank, and the bank claims that they are still liable to it thereon.

The balance of the moneys received from the bank was used by the committee for the benefit of the estate of the lunatic.

The court on deciding the case held that Cook, the committee, had no right to make the arrangement he did with Shull and Snell; that the latter were simply custodians of the fund and liable to the plaintiff therefor.

The action was in equity, the bank being a party defendant, and the case was tried as an action in equity. In the decision the case is treated as an action at law. The $4,000 in the hands of Shull and Snell were treated as part of the estate. The question whether the certificate of deposit was lost or destroyed was not considered of importance. Evidently the court was of the opinion that the evidence did not warrant a finding that it was destroyed. It seems to have been conceded at the trial that the certificate may be an outstanding obligation against the bank in the hands of others not parties to the action. At least, we cannot here assume that the certificate was ever destroyed.

The respondent relied upon the case of *Deobold* v. *Oppermann* (111 N. Y. 531). In that case it was in substance held that an administrator had no right to pledge the assets of the estate to the

sureties on his bond to secure them against liability thereon, and that assets so pledged could be reclaimed by action.

In the present case the committee had been duly appointed, and the question with him was whether the estate he represented owned the certificate at all. He could not find it and could not show that it was destroyed. The bank did not recognize his right to have the money, and would only pay upon indemnity. So the appellants became sureties under the arrangement specified. The estate had $1,400 for its own use, and the balance was placed in the hands of the sureties to remain there practically until it was determined whether the estate owned the money. The estate has now a recovery for the balance of the money, and still it is not shown that the estate in fact owns the fund. The *Deobold* case is not applicable.

The trial court, we think, erred in holding that the fund was a trust fund belonging to the estate represented by the plaintiff without reference to the question of what had become of the certificate of deposit. The estate in equity had no greater rights against the appellants than it would have had against the bank had the money still been in its hands. Upon the case as presented, the most that the plaintiff would be entitled to would be a recovery upon giving indemnity as required by section 1917 of the Code. The certificate was in effect a promissory note (*Sheldon* v. *Heaton*, 88 Hun, 535, 539) and was negotiable. The appellants having at the request of the committee assumed the risks upon the bank, were entitled to such protection as the law would have afforded the bank. In this view the estate would have just as good a claim against the appellants as it had against the bank.

The case having been disposed of upon an erroneous theory, a new trial must follow.

All concurred.

Judgment reversed and a new trial granted, costs to abide the event.